## A93A1201. DEAN v. THE STATE.
### (438 SE2d 380)

SMITH, Judge.

Edward Dean was convicted of possession of cocaine with intent to distribute, OCGA § 16-13-30 (b). He appeals from the judgment of conviction and sentence entered by the trial court on the jury's verdict.

1. Dean contends that the trial court erred in failing to direct a verdict of acquittal. "On appeal from a finding of guilt, . . . evidence

---

must be viewed in the light most favorable to the verdict. . . ." *Gazaway v. State*, 207 Ga. App. 641, 642 (1) (428 SE2d 659) (1993). The evidence at trial showed that a confidential police informant agreed to purchase cocaine from Dean. A police officer testified that he monitored a telephone conversation in which the informant and Dean arranged to meet for the purchase in a shopping center parking lot in about half an hour. The officer and his fellow narcotic detectives equipped the informant with a "body bug" and surrounded the parking lot. In approximately 30 minutes a man fitting Dean's description arrived and approached the informant. After hearing Dean agree to sell cocaine to the informant, the officers arrested Dean. During the arrest four small plastic bags fell out of Dean's shorts, and the substance in the bags was later identified as cocaine. A rational trier of fact could reasonably find that Dean was guilty of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Dean enumerates as error the failure of the trial court to allow counsel to ask certain questions on voir dire. One of the questions sought to discover a juror's religious preference. The relevant statute provides that counsel "shall have the right" to examine individual jurors regarding various matters, that would illustrate an interest of the juror in the case, including their "religious, social, and fraternal connections." OCGA § 15-12-133. However, we do not reach this issue because Dean failed to preserve it for appellate review.

This question was answered by the juror, and only then did the judge comment, "Counsel, I'm not sure that's a relevant question, religious preference, one way or the other, Counsel. I'm not sure that has any bearing on their ability to be fair and impartial. . . . I'm not certain how religious preference is relevant to the inquiry. Anyway, she's already answered the question otherwise. Do you have any other questions?" Counsel moved on to another question, never responded to the trial court's comments on the relevance of the question, and did not ask that question of any other juror.

· Unlike the sua sponte objection in *Ford v. State*, 200 Ga. App. 376 (408 SE2d 166) (1991), the comments here were in the nature of a question or an invitation to discussion rather than a sua sponte ruling. The trial court expressed doubt with regard to the question's relevance, but did not strike the answer and did not rule that the question could not be asked. Moreover, as the trial court observed, the question was answered, rendering any further discussion at that time unnecessary. Counsel did not engage in discussion, make any protest, or in any way put the trial court on notice that he disagreed with the comments. More than silent disagreement with a question or comment from the trial court is required to preserve an issue for appeal. See *Sanders v. State*, 181 Ga. App. 117, 120 (2) (351 SE2d 666)

(1986).

Defense counsel then asked the same juror, "What would you say is the biggest problem facing America today?" and "Do you feel like that this country is waging a so-called war on drugs?" Unlike the topic of the first question, inquiries on these matters are not specifically enumerated in the relevant statute, but could only fall within the general language allowing examination to determine a juror's "inclination, leaning, or bias." OCGA § 15-12-133. "While the language of the statute is broad, the trial judge retains the discretion to limit the examination to questions dealing directly with the specific case and to prohibit general questions. [Cits.]" *Chastain v. State*, 255 Ga. 723, 724 (1) (342 SE2d 678) (1986). The trial court may limit questions which are unduly argumentative, or general and hypothetical. *Gatlin v. State*, 236 Ga. 707, 708 (2) (225 SE2d 224) (1976).

Both questions in issue are general in scope, and the second as phrased is argumentative. Moreover, "[t]he record also shows that the court's rulings did not prohibit counsel from inquiring into relevant matters by properly phrased inquiries." Id. Defense counsel was allowed to ask numerous questions regarding drugs and jurors' knowledge of, involvement in and possible bias concerning drugs, and the record of his detailed and extensive voir dire consists of approximately 130 pages. The trial court did not abuse its discretion in refusing to allow these specific questions to be asked.

3. Dean next objects to the admission of the seized cocaine into evidence, contending that there was evidence of tampering or substitution because of inconsistencies in the prosecution witnesses' testimony. Two witnesses disagreed regarding the color and weight of the cocaine, and the arresting officer gave varying testimony at the preliminary hearing and the trial as to its monetary value.

However, there is uncontradicted testimony establishing the chain of custody for the four plastic bags taken from Dean. The arresting officer testified that he sealed the evidence in a plastic bag and stored it in a security locker at police headquarters. The property room officer in turn testified that he removed the sealed bag from the security locker, logged it in, and secured it in a separate drug locker. The arresting officer retrieved the sealed bag and delivered it to the state crime lab chemist at a specific time on a stated date. The chemist in turn testified that he received a sealed bag containing four plastic bags from the arresting officer at the stated time on that date. The arresting officer identified the evidence at trial, based upon the identifying marks placed on the evidence bag at his direction.

"The only burden on the state is to show with reasonable certainty that the evidence examined is the same as that seized and that there has been no tampering or substitution. [Cits.] The state met this burden, and it was not error to admit the exhibits. Any confusion

about the exhibits goes to its weight, not its admissibility, as the Georgia rule is that if the admissibility of evidence is doubtful, it should be admitted and its weight and effect should be left to the jury. [Cit.]" *Phillips v. State*, 167 Ga. App. 260, 263 (2) (305 SE2d 918) (1983). The inconsistencies in the testimony, including an alleged typographical error in the crime lab's report, do not constitute evidence of tampering or substitution, and go to the weight rather than the admissibility of the evidence. See *Jackson v. State*, 188 Ga. App. 834, 837 (3) (374 SE2d 777) (1988) (discrepancy in number of tablets inventoried and stamped markings on tablets did not constitute evidence of substitution or tampering); *Richards v. State*, 189 Ga. App. 146, 147 (1) (375 SE2d 278) (1988) (discrepancy in weight of cocaine and "faulty recollection" of police officers did not constitute evidence of tampering); *Pinson v. State*, 207 Ga. App. 734, 736 (2) (429 SE2d 106) (1993) (discrepancy in number of bags of cocaine did not constitute evidence of tampering or substitution). We find no error in the admission of this evidence.

4. Dean also enumerates as error the admission of two similar transactions: a Gwinnett County guilty plea to possession of cocaine with intent to distribute and possession of marijuana with intent to distribute; and a DeKalb County guilty plea to possession of cocaine and marijuana. As to the former, where each involves possession of a controlled substance with intent to distribute, there is sufficient similarity between the offense charged and the prior conviction. *Willis v. State*, 199 Ga. App. 658, 659 (1) (405 SE2d 739) (1991). The Gwinnett County convictions for possession with intent to distribute therefore are sufficiently similar to the offense charged here.

While the DeKalb County guilty plea does not involve the possession of controlled substances with intent to distribute, the underlying circumstances arose directly from the arrest in this case. After his arrest Dean asked the police officer if he could be taken home so that he could obtain his ex-wife's telephone number in order to make arrangements for his bond. The officer agreed, but he also asked if Dean had any more drugs at his house. Dean stated that he did, gave permission to search his house, signed a consent to search form, and told the officer that the drugs were on his bedroom dresser, where the drugs were found.

The DeKalb County arrest for possession of cocaine and marijuana is part of the res gestae of the offense under consideration here. "Surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. [Cit.] Hence, acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae and it does not matter that the act is another criminal offense and does not tend to establish the

main offense. [Cit.] In addition, all circumstances surrounding an arrest are admissible for whatever value the jury desires to place on them. [Cits.]" *Fuqua v. State*, 183 Ga. App. 414, 419-420 (1c) (359 SE2d 165) (1987).

Accordingly, we find no error in the admission of evidence of Dean's prior guilty pleas.

5. Dean also challenges the constitutionality of the sentence of life imprisonment imposed under OCGA § 16-13-30 (d). However, the Georgia Supreme Court has determined that the provisions of that Code section do not violate the provisions of the United States Constitution, *Grant v. State*, 258 Ga. 299, 300 (2) (368 SE2d 737) (1988), or the Georgia Constitution. *Stephens v. State*, 261 Ga. 467, 468 (5) (405 SE2d 483) (1991). Dean also contends that he did not receive adequate notice that the state would seek a life sentence under OCGA § 16-13-30 (d). This contention has no merit. Before trial, the state filed a "Notice of Intent to Introduce Evidence of Similar Transactions and Evidence in Aggravation of Punishment," detailing two similar transactions, one of which had already resulted in an indictment, plea and sentence. See generally *Hailey v. State*, 263 Ga. 210, 212, n. 3 (429 SE2d 917) (1993). This enumeration of error has no merit.

6. Dean's final enumeration of error goes to the charges given to the jury on the presumption of innocence and reasonable doubt. Essentially identical charges were held to be a complete and accurate statement of the law in *Guyton v. State*, 206 Ga. App. 145, 147 (5) (424 SE2d 87) (1992). We find no error in these charges as given.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 3, 1993 —
RECONSIDERATION DENIED NOVEMBER 19, 1993 —

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, Karen E. Reed, Assistant District Attorney*, for appellee.

